UNITED STATES of America, Plaintiff,

v.

Peter CAVATAIO, Defendant.

Crim. No. 6-80908.

United States District Court,
E. D. Michigan, S. D.

Jan. 19, 1977.

Paul R. Caldwell, Spec. Atty., Organized Crime & Racketeering Section Detroit, Mich., for plaintiff.

N. C. Deday LaRene, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

PHILIP PRATT, District Judge.

An indictment returned in this District charges defendant with having knowingly received a firearm which had been shipped in interstate commerce after being convicted of a crime punishable by imprisonment in excess of one year, in violation of 18 U.S.C. § 922(h)(1). The defendant challenges the indictment because, he asserts, the only conviction charged in the indictment which involves an offense punishable by more than a year's imprisonment is a 1970 Michigan conviction for malicious destruction of property that was obtained in violation of the United States Constitution. The government acknowledges that this conviction is the only one charged in the indictment punishable by a year's imprisonment, but denies that the conviction is invalid.

## I. PROCEDURAL ISSUES

The government's burden includes proving, as one of the essential elements of the crime, that the defendant was in fact convicted of a crime punishable by imprisonment for more than one year. *U. S. v. Steeves*, 525 F.2d 33 (8th Cir. 1975); *Brown v. U. S.*, 483 F.2d 116 (4th Cir. 1973); *U. S. v. Lufman*, 457 F.2d 165 (7th Cir. 1972); *Gonns v. U. S.*, 231 F.2d 907 (10th Cir. 1956). Such a conviction must, of course, be constitutionally valid. *Dameron v. U. S.*, 488 F.2d 724 (5th Cir. 1974); *Brown v. U. S., supra; Pasterchik v. U. S.*, 466 F.2d 1367 (9th Cir. 1972); *U. S. v. Lufman, supra; U. S. v. DuShane*, 435 F.2d 187 (2d Cir. 1970).

It has generally been held that it is proper to challenge a prior conviction, even one that was not challenged on direct appeal or in earlier collateral proceedings, in a criminal prosecution where the prior conviction forms one of the essential elements of the offense with which the defendant is charged. *U. S. v. Martinez*, 413 F.2d 61 (7th Cir. 1969). *Marcum v. U. S.*, 350 F.Supp. 1115 (S.D.W.Va.1972). This holding stems from *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), which held that a conviction in violation of *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1962), could not be used to support guilt or enhance punishment. This has led to a series of cases where federal courts have refused to convict a person for violation of gun laws if one of the essential elements of the government's proofs turned out to be a previously unassailed conviction where the defendant lacked counsel. E. g., *Brown v. U. S., supra; U. S. v. DuShane, supra, Marcum v. U. S., supra*. The rule has not been limited to cases of Sixth Amendment violations. In *U. S. v. Graves*, 19 Cr.L. 2227 (3rd Cir., April 15, 1976) the Third Circuit applied the rule to alleged violations of a juvenile's due process rights as outlined by *Kent v. U. S.*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). The rule has also been

applied to violations of the Fourth Amendment, *Beto v. Stacks,* 408 F.2d 313 (5th Cir. 1969), and to a case where the defendant claimed his plea of guilty was given involuntarily. *U. S. v. Thoresen,* 428 F.2d 654 (9th Cir. 1970).

It is clear that the Court must review defendant's allegations to determine if the 1970 felony conviction was constitutionally defective. The threshold questions are what standard must the Court use and upon whom is the burden of persuasion. The defendant argues that the burden is on the government to prove the validity of the conviction beyond a reasonable doubt as part of its usual burden of proof. The government rejects this approach and says, instead, that it meets its burden of proof by introducing into evidence documented proof of the prior conviction and then leaving it to the defendant to establish a prima facie case for invalidity.

*U. S. v. Graves, supra,* provides some support for the defendant's position. In *Graves,* the Third Circuit held that in a prosecution under the Omnibus Crime Control and Safe Streets Act of 1968, which requires proof of a prior conviction,

" . . . a *Kent* violation, implicating as it does significant due process rights in addition to the right to counsel, falls squarely within the prohibitions of *Burgett v. Texas, supra, United States v. Tucker, supra* [404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592], and *Loper v. Beto, supra* [405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374]."

*U. S. v. Graves, supra,* at 2228.

Turning to the precise issue before this Court, the opinion went on to say:

"Since there would be no offense under either count of the indictment in the absence of a valid conviction, proof of such a conviction is an element of the government's case. That element can ordinarily be satisfied by evidence of the record of a prior conviction. But where, as here, the validity of that offense has been put in issue, the burden shifts to the government to prove that it was not invalid on the grounds which have been put in issue or that the defendant waived his constitutional rights. The precise issue of the standard of proof that the government must meet, however, has not been considered heretofore, but there are analogies. For example, in federal criminal trials the government may rely on the presumption of sanity until the 'defense' of insanity has been raised. Then it must prove a defendant's mental capacity beyond a reasonable doubt." *Id.*

The *Graves* court then observed that since the government chose to rest its case without any effort to bolster the validity of the conviction in the face of the defendant's legitimate attack, a judgment of acquittal should have been granted upon defendant's motion.

*U. S. v. McDowell,* 328 F.Supp. 606 (W.D. Pa.1971), provides some support for the government. In that case the defendant was charged with a violation of certain federal gun laws, having previously been convicted of a crime punishable by more than a year in prison. In *McDowell* the defendant challenged the validity of the earlier conviction—which had never been attacked previously—because of an alleged failure to notify him of a right to appeal. The *McDowell* court distinguished between

" . . . constitutional infirmities which are merely technical (such as that relied on in the case at bar) which for the sake of punishing the constable for blundering permit the guilty man to go free, and those which may affect the intrinsic reliability of the guilt-finding procedure." *Id.* at 610.

The court said that much of the language of *U. S. v. DuShane, supra,* (and implicitly, therefore, *U. S. v. Graves, supra* ), which was a challenge that implicated the basic reliability of the trial, was not applicable to a more "technical" challenge. The court held that the government need not negate every possible constitutional infirmity that might conceivably have tainted an earlier unappealed conviction. Rather, while

" . . . the ultimate burden of persuasion may rest on the Government, it

certainly seems clear that in the first instance the burden of going forward with proof sufficient *prima facie* to raise the issue is incumbent upon the defendant. Otherwise every criminal trial would be encumbered with an infinite number of collateral issues, limited only by the ingenuity of counsel in imagining additional 'witty diversities' of constitutional dimension . . . "

*U. S. v. McDowell, supra,* at 608–9.

While it is not crystal clear on the subject, *U. S. v. Thoresen, supra,* apparently agrees in putting the burden on the defendant in the first instance. In *Thoresen,* the defendant in a gun case challenged the validity of a state conviction by a pre-trial motion which was denied by the district court. The court examined *Burgett v. Texas, supra,* and its progeny and held

" . . . that Thoresen was entitled to an opportunity, at the trial, to establish the invalidity, under the Constitution, of the Maine conviction and to a determination of that issue, on the merits, by the trial court." *U. S. v. Thoresen, supra,* at 664.

This language suggests that the Ninth Circuit had in mind placing the initial burden on the defendant.

■ The better view requires that the Court adopt the approach which puts the burden on the defendant, initially, to make out a prima facie case of invalidity—at least in the circumstances of this case. While the Court is not prepared to adopt all the ramifications of the *McDowell* court's distinction between "significant" and "merely technical" violations of the Constitution, it is clear that the challenge advanced here is qualitatively different from a challenge based on lack of counsel. The defendant in this case asserts that the state trial judge's refusal to recuse himself was a violation of the due process clause in view of the judge's prior judicial contacts with the defendant's brother-in-law. Thus, the court is not faced with the necessity of answering a discrete, discernible factual question (i. e., did defendant have counsel), but rather a balancing problem where the

court must determine if there was a violation of judicial ethics and, if so, whether it was constitutionally significant. *Cf. Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). This is also an issue that was presented to the state appellate courts, which considered and decided defendant's claims. *People v. Cavataio,* 34 Mich.App. 126, 190 N.W.2d 718 (1971). In addition, it is not an issue where a defendant normally gets the benefit of shifting burden of proof. *Compare Katz v. U. S.,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Fourth Amendment) and *Wilson v. Wiman,* 386 F.2d 968 (6th Cir. 1967); *cert. denied,* 390 U.S. 1042, 88 S.Ct. 1634, 20 L.Ed.2d 303 (1967) (showing of lack of counsel shifts heavy burden onto government to show knowing and intelligent waiver of Sixth Amendment rights). In making this determination, the Court is mindful of the fact that while the validity of a criminal conviction can arise in many contexts,

"the sooner the issue is fully litigated the better for all concerned. It is always preferable to litigate a matter when it is directly and principally in dispute, rather than in a proceeding where it is collateral to the central controversy." *Sibron v. New York,* 392 U.S. 40, 56–7, 88 S.Ct. 1889, 1899, 20 L.Ed.2d 917 (1968).

To come to any other conclusion would be inconsistent with the administration of justice. A defendant who seeks to challenge a prior conviction in a subsequent trial, must do more than merely assert invalidity to put the government to its proofs. Otherwise the courts would become bogged down with excessive collateral matters and criminal verdicts would never have any finality.

## II. MERITS

■ Defendant bottoms his claim of judicial prejudice on five asserted facts:

1. The state trial judge was a defendant in a civil slander suit;

2. Defendant's brother-in-law was a director of the corporate plaintiff in that suit;

3. The trial judge recused himself for unknown reasons in a civil suit of

uncertain description in which defendant was apparently a defendant;

4. The trial judge was involved in a criminal investigation concerning an alleged plot to kill him. Defendant's brother-in-law is supposed to be among those who were investigated; and

5. The trial judge denied defendant an opportunity to request his disqualification from the Presiding Judge of the Oakland County Circuit Court.

None of these facts appear to rise to the level of a due process violation which necessarily denied a fair trial. See *Donnelly v. DeChristoforo, supra,* 416 U.S. at 645, 94 S.Ct. 1868. The allegations are directed at alleged prejudice of the trial judge as against a brother-in-law of the defendant. The Code of Judicial Conduct 3(C)(1)(a) provides that a judge should disqualify himself when his impartiality might reasonably be questioned, as in a case where he has a *personal* bias of some sort. While the law is no longer as rigid as to hold strictly to the common law rule that bias did not exist outside of strict financial interest or family relationship to one of the parties, see 46 Am.Jur.2d § 166, it is important to remember that the Court here is not reviewing the conviction to say what the trial judge should have done, but rather to determine if the conviction was secured by a violation of due process of law. In that regard, cases construing 28 U.S.C. § 144, which governs the disqualification of federal judges, are revealing, although not controlling. These cases, too, follow the common law in requiring "personal" bias.[1] *See Oliver v. Michigan State Board of Education,* 508 F.2d 178, 180 (6th Cir. 1974); *cert. denied,* 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975).

Various Supreme Court decisions concerning the importance of a completely impartial judge, cited by the defendant, do not suggest a contrary result. The majority of those cases concern situations where the judge was both the object of insulting behavior and the trier of the alleged offender for criminal contempt. *Johnson v. Mississippi,* 403 U.S. 212, 91 S.Ct. 1778, 29 L.Ed.2d 423 (1971); *Mayberry v. Pennsylvania,* 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971); *Bloom v. Illinois,* 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); *In re Murchison,* 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955). There is a clear "personal" bias and motive for revenge in criminal contempt cases that was not present in defendant's 1970 state conviction. Other cases cited by the defense are more properly classified as situations where the judge had some financial or professional stake in the outcome of the proceedings. *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); *Ward v. Village of Monroeville,* 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972); *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927). There appearing nothing in the defendant's motion which, if true, would raise a prima facie violation of the due process clause or any other Constitutional provision, the Motion to Dismiss the Indictment is denied.[2]

IT IS SO ORDERED.

---

1. Since "judicial" bias is not sufficient to make out a statutory case for recusal, it seems incontestable that allegation number 5, above, would not qualify as any sort of Constitutional violation.

2. This opinion has been revised for publication. The resolution of other issues raised by the defendant is not included herein.